The State v. Herbert McCullough, Appellant.

Division Two, December 20, 1926.

1. **INDICTMENT: Robbery.** An indictment charging that defendant upon one R. W. Claxton, did "unlawfully and feloniously make an assault, and one Paige touring automobile, of the value of $450, and $16.10 in good and lawful money of the United States, of the value of $16.10, of the total value of $466.10, the money and personal property of said R. W. Claxton, from the person and against the will of the said R. W. Claxton, and then and there by force and violence to the person of said R. W. Claxton, and then and there by putting the said R. W. Claxton in fear of an immediate injury to his person, unlawfully and feloniously did rob, steal, take and carry away," etc., is in form and substance a sufficient charge of first-degree robbery.

2. **ROBBERY: Substantial Evidence: Demurrer.** Testimony of Claxton that two men in the night jumped upon the running board of his automobile; that one of them placed a gun at his neck and ordered him to continue to drive the car, threatening to blow his brains out if he refused to proceed; that after the witness had driven the car a short distance, the two got into the car, the defendant seating himself beside the witness, and the other in the rear seat, holding a pistol to his neck; that during a ride of twenty blocks defendant took $16.10 from the pockets of the witness; that the two then ordered him out of the car and took it with them; and the testimony of the officer who arrested defendant that he admitted he was guilty of the robbery; and the positive identification of defendant as the man who entered Claxton's car and took the money

from him, was sufficient to sustain a verdict of guilty of the crime of first-degree' robbery, and required that the demurrer to the evidence be overruled.

**3. INSTRUCTIONS: Given without Exceptions.** Instructions given for the State without objection made or exception saved are not for review on appeal. But, nevertheless, the instructions so given and assigned as error in the motion for a new trial declared all the law necessary as guides to the jury in arriving at a proper verdict in the case.

**4. ————: On all Law of Case: Matters of Defense: Admission.** The trial court is not required to give an instruction relating to matters of defense unless requested so to do or such instruction is necessary for the guidance of the jury in returning their verdict. Where a police officer testified for the State that defendant admitted the robbery charged, and defendant made no request for a preliminary hearing on the admissibility of the alleged admission, and made no objection to the testimony, and made no request that the court instruct the jury that if they found the admission was not free and voluntary they should not take it into consideration, the failure of the court to give, of its own motion, such an instruction, was not error.

Corpus Juris-Cyc. References: **Criminal Law**, 16 C. J., Section 2253, p. 906, n. 8; Section 2497, p. 1056, n. 14; Section 2498, p. 1056, n. 20; Section 2500, p. 1058, n. 37; 17 C. J., Section 3586, p. 247, n. 82. **Robbery**, 34 Cyc., p. 1802, n. 38; p. 1808, n. 73; p. 1810, n. 89, 90.

Appeal from Jackson Circuit Court.—*Hon. Nelson E. Johnson,* Judge.

AFFIRMED.

*North T. Gentry,* Attorney-General, and *James A. Potter,* Assistant Attorney-General, for respondent.

(1) The court did not err in failing to instruct the jury on the question of voluntary and involuntary statements and admissions. Sec. 4025, R. S. 1919. The statute does not require, and never was intended to require, the court to instruct the jury on collateral and incidental matters. State v. McNamara, 100 Mo. 107; State v. Lackey, 230 Mo. 718; State v. Nicholas, 222 Mo. 425. Defendant cannot complain of error in failing to instruct the jury upon a collateral matter when such instruction was not requested. State v. Barnett, 203 Mo. 658; State v. Bond, 191 Mo. 555; State v. McCarver, 194 Mo. 717; State v. West, 202 Mo. 128; State v. Albright, 144 Mo. 642; State v. Cantlin, 118 Mo. 111; State v. Vinso, 171 Mo. 591. (a) When Officer Thurman was offered as a witness, the defendant did not object to his testimony, nor did he request that the jury be excluded and that the court hear the evidence relating to the alleged admissions of the defendant. An admission of a defendant is always presumed to be voluntary, and the court properly admitted the testimony of Thurman. State v. Hayes, 247 S. W. 165; State v. Arm-

strong, 203 Mo. 559; State v. Thomas, 250 Mo. 210. The defendant did not testify directly that the alleged admission was extracted from him by reason of any threats or force or through fear of any personal injury. State v. Hayes, 247 S. W. 165. (2) Where there is any substantial evidence of the guilt the case is one to the jury. State v. Jackson, 283 Mo. 24; State v. Hascall, 284 Mo. 616. (3) The indictment in the case was in due and proper form. State v. Strada, 274 S. W. 34; State v. Reich, 293 Mo. 415. (4) The defendant failed to object or except to any instruction given by the court, hence the propriety of such instructions is not now open to review. However, the instructions given by the court were in the usual and approved form. State v. Cardwell, 279 S. W. 100; State v. Tipton, 271 S. W. 55; State v. Brown, 270 S. W. 275; State v. Ritter, 288 Mo. 385; State v. Boes, 262 S. W. 1019; State v. Williams, 274 S. W. 427; State v. Jackson, 267 S. W. 855.

RAILEY, C.—On May 29, 1925, the grand jury of Jackson County returned into the circuit court of said county an indictment, which, omitting formal parts, reads as follows:

"The grand jurors for the State of Missouri, duly summoned from the body of said County of Jackson, being duly impaneled, sworn and charged to inquire within and for said county, upon their oaths present and charge that Herbert McCullough, whose Christian name in full is to the said grand jurors unknown, on the 16th day of May, 1925, at the County of Jackson and State of Missouri, in and upon one R. W. Claxton, whose Christian name in full is to the said grand jurors unknown, did then and there unlawfully and feloniously make an assault, and one Paige touring automobile, of the value of four hundred and fifty dollars, and $16.10 in good and lawful money of the United States, of the value of $16.10, of the aggregate value of $466.10, the money and personal property of the said R. W. Claxton, from the person and against the will of the said R. W. Claxton, and then and there by force and violence to the person of the said R. W. Claxton, and then and there by putting the said R. W. Claxton in fear of an immediate injury to his person, unlawfully and feloniously did rob, steal, take and carry away, against the peace and dignity of the State."

Defendant was arraigned, entered a plea of not guilty, was tried before a jury, and on July 22, 1925, the following verdict returned:

"We, the jury, find the defendant Herbert McCullough, guilty of robbery in the first degree as charged in the indictment and assess his punishment at five years in the State penitentiary."

Thereafter, in due time, defendant filed his motion for a new trial, which was overruled, allocution granted, judgment rendered, sen-

tence pronounced in conformity with the verdict and an appeal allowed defendant to this court.

He is here without any brief, but counsel for respondent have made a full and fair statement of the facts as disclosed by the record, and we adopt the same as follows:

"The evidence in the case is very short and may be summarized as follows:

"The prosecuting witness, R. W. Claxton, lived in Kansas City, Kansas, but worked for the Frisco Railroad in Kansas City, Missouri. On the evening of May 16, 1925, Mr. Claxton drove his Paige car into Kansas City, intending to visit a friend near the intersection of Tenth Street and Lydia Avenue. When he had reached his destination and was in the act of parking his car at the curb, two men jumped on the running board on the right side of his car, one of them placed a gun at the neck of witness and, either he or the other man, ordered witness to continue to drive the car, at the same time applying an epithet to him and threatening to blow his brains out if he refused to proceed. The witness started his car forward and after driving a short distance, the two robbers got in the car, one of them occupying the front seat with the witness, and the other getting in the rear seat and holding a pistol at the neck of the witness. The witness positively identified the defendant as the one who rode in the front seat with him for a distance of some twenty blocks. During this ride the defendant took the sum of sixteen dollars and ten cents from the pockets of the witness. Upon arriving at or near Eleventh Street and Agnes Avenue, the two robbers ordered the witness out of the car and left him at that point, taking the automobile with them. During the ride the witness got several good looks at the defendant who was in the seat beside him. At the point where the robbers ordered the witness to get out of the car the witness stopped the car, but before doing so pulled the 'choker' so as to flood the carburetor and make it difficult for the robbers to start the car. This act of the witness delayed the starting of the car some five or six minutes, during which time the witness engaged in a conversation with the robbers, and with the aid of an arc light near by was enabled to get a good view of the defendant. Soon after the robbery the witness reported same to the police and gave a minute description of the defendant, including a description of his cap, necktie, shirt, coat, trousers and overcoat. A day or two later the defendant was arrested at Topeka, Kansas, and was returned to Kansas City by the Kansas City police. Upon his return to Kansas City some three or four days after the robbery, defendant was placed in the show-up room, where he was positively identified by the prosecuting witness, Claxton, as one of the men who robbed him. The testimony of the

prosecuting witness was as direct and positive as it could possibly have been.

"The State also offered as a witness Officer B. H. Thurman, who made the trip to Topeka to return the defendant, and this officer testified that after defendant's return to Kansas City he admitted that he was guilty of robbing the witness Claxton.

"The defendant testified in his own behalf to the effect that his home was in the City of Omaha, Nebraska; that he was a barber by trade, and that work in his line was slack in Omaha, Nebraska, and he came to Kansas City on the 17th day of May, 1925 (the day after the robbery), for the purpose of working at his trade. He testified that he knew nothing about the robbery of Mr. Claxton. On cross-examination he admitted that he had served a term in the Nebraska reformatory under the name of Oehler, under a conviction for the crime of selling mortgaged property; that he had been out of the reformatory about three months prior to his visit to Kansas City on the 17th day of May, 1925.

"On re-direct examination, the defendant stated that after he was brought back to Kansas City about the 20th day of May, he was taken to the office of Officer Toyne, chief of the motor-theft bureau, where he was questioned concerning a number of robberies by the witness Thurman and officers Stewart and Ely, and Clerk Moore. He stated that these officers presented to him a book containing a long list of crimes committed in Kansas City, and insisted that the defendant had committed a number of these crimes. Defendant further testified that he denied the commission of said crimes, whereupon officer Ely told him that for every crime he denied he, Ely, was going to turn Officer Stewart loose on him; that Officer Stewart had in his hand at the time a piece of rubber hose and struck the witness with the rubber hose. He also testified that there was a black jack on the desk of Officer Ely and that Clerk Moore had a pistol in his pocket; that after an hour or more of questioning and threatening, the defendant finally said that he committed all the crimes mentioned in the police book.

"The court gave six instructions on its own motion. Defendant did not object to any instruction given by the court, nor did he request the giving of any instruction on behalf of the defendant or on any point not covered by the court's instruction."

Such other matters as may be deemed important will be considered later.

I. In paragraph three of his motion for a new trial, appellant contends that the "indictment does not state facts sufficient to constitute an offense." It is set out in full and speaks for itself. **Indictment.** It meets with the requirements of Section 3307, Revised Statutes 1919, and, tested by repeated decisions of this court, is suf-

ficient as to both form and substance.   [State v. Dickens, 285 S. W. 445, 1. c. 447; State v. Wallace, 278 S. W. 663, 1. c. 665; State v. Strada, 274 S. W. 34; State v. Brazel, 270 S. W. 273; State v. Roderman, 297 Mo. 147, 248 S. W. 965; State v. Yates, 252 S. W. 644; State v. Affronti, 292 Mo. 67, 238 S. W. 109; State v. Huffman, 238 S. W. 431-435; State v. Eddy, 199 S. W. 187; State v. Flynn, 258 Mo. 214-224, 167 S. W. 516.]

II.   In the motion for a new trial it is insisted that the court should have sustained a demurrer to the evidence at the conclusion of the case.   The State produced substantial testimony **Demurrer.** as to defendant's guilt as heretofore shown.   The foregoing contention is without merit and overruled.

III.   In paragraph 10 of the motion for a new trial, the court is charged with error ''in giving, over defendant's exception, instructions numbered one, two, three, four, five, six and **Instructions.** seven.''   The bill of exceptions discloses that these instructions were given without objection or exception on the part of appellant or his attorney.   We may say, in passing, that although said instructions were given without objection, and no error is attempted to be pointed out in the record on account of the giving of same, we have carefully read the instructions, and find that they are sustained by rulings of this court, and properly declared all the law that was necessary to enable the jury to properly pass upon the merits of the case.

IV.   In paragraph one of the above motion, a new trial was asked, ''because the court erred in failing to instruct the jury to the effect that if they found and believed from the evidence that the statements of defendant, mentioned in evidence as having been **Instruction:** made after his arrest, were not free and voluntary **All Law of Case:** (and defining said terms), they should not take **Admission.** such evidence thereof into consideration in deciding the guilt or innocence of the defendant.''

Turning to the transcript we find that the State, as a part of its case in chief, produced Mr. B. H. Thurman, a member of the police force, who testified that he knew defendant and had talked with him.   The following then occurred, without objection:

''Q.   Have you had a talk with him about the Claxton robbery? A. I did.

''Q.   Did he make any statement to you about that robbery?   A. He admitted it.''

As heretofore shown, Mr. R. W. Claxton clearly identified defendant as one of the men who robbed him. The State thus made out a plain case against defendant which needed no explanation by instruction or otherwise. When Thurman was asked, if defendant made any statement to him about the Claxton robbery, counsel for appellant made no request for a preliminary hearing on the admissibility of the alleged admission; he made no objection to the above testimony of the policeman, and made no request for an instruction relating to the matters complained of in above motion. Section 4025, Revised Statutes 1919, only requires the court to instruct whether asked or not on those matters which are considered a part of the State's case. In respect to a collateral matter, like the one under consideration here, which relates to defendant's defense, the court is not required to instruct with reference thereto unless requested so to do by appellant and such an instruction is necessary for the information of the jury in returning their verdict, as contemplated by Section 4025, supra.

We are of the opinion that, in respect to above matter, the settled rulings of this court are adverse to appellant's contention, based on the facts of this case. In this connection, it may be appropriate to say, that we have held, where a defendant is entitled to a converse instruction, he must offer or request such an instruction at the trial, before he can convict the court of error in failing to give the same. We have likewise held that, as the question of alibi relates to the defendant's defense and is no part of the State's case, the court cannot be charged with error in failing to instruct on this subject unless requested so to do. As sustaining the above pronouncement, we call attention to the following cases: State v. Cardwell, 279 S. W. 100; State v. Brazel, 270 S. W. 274; State v. White, 263 S. W. 195; State v. Daugherty, 302 Mo. 638, 259 S. W. 788; State v. Carr, 256 S. W. 1048; State v. Parker, 301 Mo. 294, 256 S. W. 1042; State v. Lackey, 230 Mo. 718-721; State v. Bond, 191 Mo. 563.

V. Appellant in his motion complains of the closing argument of the State's attorney before the jury. In this case, the defendant testified as a witness, and on cross-examination admitted that he had been convicted in Nebraska for selling mortgaged **Argument** property that belonged to his aunt. He also admitted **to Jury.** that he was sentenced to the State Reformatory for four years, and served out his term. Having admitted to Policeman Thurman that he robbed the prosecuting witness in this case, we hold that the prosecuting attorney was within the evidence in making the statements complained of in above motion. The court saw the witnesses produced at the trial; heard them testify, heard the respective arguments of counsel and, hence, is in much better position than the

appellate court to determine whether injustice had been done the defendant by the remarks complained of in the argument. It may be true, that cases are brought here, where counsel have overstepped the rules of propriety to such an extent that we can say as a matter of law, on the face of the record, reversible error has been committed, which necessitates the granting of a new trial. On the facts of this case, however, the court committed no error in overruling the above assignment.

VI. The trial court committed no error in the admission or rejection of evidence during the progress of the trial. It gave to the jury correct instructions, and all that were necessary for the jury to have in properly passing upon the merits of the case. The defendant was not only found guilty upon substantial evidence, but upon clear and convincing proof of his guilt as to robbery in the first degree. He was accorded a fair and impartial trial before an unprejudiced jury and received mild punishment for his crime and must suffer the consequences therefor.

The judgment below is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.