STATE of Missouri, Respondent,

v.

Robert W. JACKSON, Appellant.

No. 53973.

Supreme Court of Missouri,
Division No. 2.

July 14, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 8, 1969.

John C. Danforth, Atty. Gen., Jefferson City, Jerry R. Linscott, Special Asst. Atty. Gen., Kansas City, for respondent.

Elwyn L. Cady, Jr., Independence, for appellant.

BARRETT, Commissioner.

The appellant, Robert W. Jackson, has been found guilty of neglecting and refusing to "provide adequate food, clothing and medical attention" for his four children, Harrell, 7, Darrell, 7, Carrol, 6, and Willis, 5, and his punishment fixed at a fine of $250.00 and imprisonment in the county jail for six months. RSMo 1959 Supp. § 559.353, V.A.M.S. The appellant's former wife, Velma, and the four children reside in Brunswick, in Chariton County with her father. Prior to May 1965 the parties all lived in Columbia and the appellant was employed at University Hospital. Velma's testimony that Robert was in good health, had no physical defects, and had not contributed to the support of his children was undisputed. And upon this appeal the sufficiency of the information and the evidence in support of the charge are not questioned by appellant's self-procured counsel. His counsel make three assignments of error, two related and all three said to involve constitutional questions, hence, jurisdiction of the appeal in this court in this misdemeanor conviction.

The first two and related points are that the "court erred in failing to discharge appellant because of the unconstitutional arrest and spiriting away of appellant from his home county while being held incommunicado without access to his attorney," and in any event that the court erred in

not submitting the factual issues "concerning the arrest and processing of appellant to the jury." In support of these propositions appellant's counsel rely on Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The factual bases of these assignments are that the neglected children reside in Chariton County where the charge was filed and appellant, allegedly, in violation of his constitutional rights, was arrested "upon a state warrant" in Kansas City and transferred to Chariton County where he was tried.

The insuperable difficulty with these two points is that upon the full transcript they are not supported or substantiated. Appellant, in Chariton County, on February 14, 1968, filed a "Motion for Discharge" and on March 7, 1968, an "Affidavit of Defendant" stating that he was arrested in Jackson County by two deputy sheriffs, one from Chariton County, "who I have sued in the Federal and State courts for violation of civil rights while I was imprisoned in the Chariton County jail" and was refused permission to call his lawyer and "whereupon, I was subjected to processing at the Jackson County jail and was transported to the Chariton County jail for imprisonment, all without the aid and assistance of my attorney." The next record entry is that on April 4, 1968, "Motion for Discharge of Defendant overruled. Defendant directed to appear in Court May 20. Cause reset for trial May 28." On May 28, 1968, the record recites that "the motion which has been previously argued on the basis of affidavits *and the testimony taken of the defendant and other witnesses* (italics supplied) concerning the circumstances surrounding the arrest of the defendant be hereby incorporated by reference, *and defendant now offers to reargue the motion during the trial before the jury with appropriate instructions and the jury to decide the factual portions* of those circum-

stances surrounding the arrest." The court denied this request, counsel for both parties announced ready for trial and the cause proceeded to trial upon the testimony of Jackson's former wife with the noted result.

■ Appellant only has approved and filed, purportedly, the full transcript and it does not contain any "testimony taken of the defendant and other witnesses." All other questions aside, including the jurisdictional effect of any unlawfulness in his arrest (State v. Howe, Mo., 364 S.W.2d 546; 22 C.J.S. Criminal Law §§ 144, 146), and the impropriety of submitting the facts relating to the motion to discharge to the jury, the motion by defendant, including his motion for a new trial, including his supporting affidavits do not prove themselves (State v. Jordan, 353 Mo. 405, 182 S.W.2d 563; State v. Marshall, 317 Mo. 413, 297 S.W. 63), hence there is no supported basis for his assertion of unlawful or "unconstitutional arrest." The consequence is that at best these constitutional questions are but colorable (State v. Euge, Mo.App., 349 S.W.2d 502) and there is in point of fact no supported basis for the claimed invasion of constitutional rights. State v. Brookshire, Mo., 325 S.W.2d 497.

■ Jurisdictionally, however, this is not true as to appellant's third claim that the argument of the prosecuting attorney, commenting on his appearance in the courtroom as a "violation of his constitutional privilege against self-incrimination." This asserted ground, even though not necessary to a disposition of the appeal, raises a constitutional question in a jurisdictional sense and confers jurisdiction on this court. State v. Civella, Mo., 368 S.W.2d 444; State v. Poelker, Mo., 378 S.W.2d 491; State v. Harris, Mo.App., 313 S.W.2d 219; State v. Dean, Mo., 181 S.W. 1135.

The argument objected to as infringing his constitutionally protected right against self-incrimination is this:

"—I submit under the evidence, all the evidence from this witness stand

shows that this defendant was an able-bodied man. Mrs. Jackson testified when he came he appeared to be in good health *substantially as he is today. You can see him there*. So there is no testimony that he was disabled, is there?"

 Assuming that it is not proper to refer, in a derogatory or incriminating manner, to the defendant's appearance and demeanor "during his forced presence in the courtroom" (State v. Davis, Mo., 190 S.W. 297), it does not follow as a matter of course that appellant is entitled to a new trial. The key words in the statute and the rule (RSMo 1959, § 546.270, V.A.M.S.; Cr. Rule 26.08, V.A.M.R.) are "accused" and "testify" and the test is whether the jury's attention was called to the fact that the accused did not testify. The first statement, "You want to remember that this testimony is undisputed, no one got up and said any different, did they?" does not fall within the condemnation of this test. State v. Tallie, Mo., 380 S.W.2d 425; State v. Hayzlett, Mo., 265 S.W.2d 321. As to the italicized and quoted argument it must be remembered that the safeguard against self-incrimination refers to evidence, "testimonial compulsion"; it does not mean that the accused may not be subjected to the observation of witnesses and jurors—in the absence of his being required to perform some affirmative act in aid of observation. 22A C.J.S. Criminal Law §§ 649, p. 539, 652, p. 553. For example, in State v. Dean, Mo., 400 S.W.2d 413, it was held that an appellant's right to not give evidence against himself was not infringed when at arrest the police placed a hat on his head soon after it was found, "and again during cross-examination when he was requested to try the hat on, which he did."

In these circumstances the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.