STATE of Missouri, Plaintiff-Respondent,

v.

Leroy PROCTOR, Defendant-Appellant.

No. 36717.

Missouri Court of Appeals,
St. Louis District,
Division Three.

March 16, 1976.

Christelle Adelman-Adler, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., George A. Peach, III, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

GUNN, Judge.

Defendant appeals his conviction for the crime of stealing from a dwelling house. Defendant alleges that the trial court erred: 1) by overruling defendant's motion to suppress an unduly suggestive lineup identification; 2) by failing to declare a mistrial after certain hearsay testimony; 3) by compelling defendant to walk in the courtroom to display a limp. We find no error and affirm the judgment.

The conviction stems from the theft of several items of personal property from the John Dooley home in St. Louis. Jeff Eilers, a neighbor of the Dooleys, testified that he observed two men park an automobile across the street from Eilers' home and walk up an alley past Eilers to the Dooley home. Eilers observed one of the men enter the Dooley home while the other, identified as defendant, went back to the car and sat in the driver's seat. After about ten minutes, the man who had entered the Dooley home returned and placed a large bundle in the car, and with the defendant driving, both men left. Eilers wrote down the license number and description of the car in which he had seen the defendant leave.

Eilers also testified that the defendant had twice passed within fifteen feet of him

and that he had observed defendant's face for about fifteen minutes. Eilers gave a detailed description of the defendant to police including the fact that defendant walked with a very bad limp. Another neighbor testified that he had seen the two men in the vicinity of the Dooley home, had noted that one of the men walked with a limp and had seen the other place a bundle in the car. However, this neighbor could not identify either man.

■ Defendant's first allegation of error concerns Eilers' identification of him. The day after the theft, police showed Eilers pictures of four or five men taken from police files, and Eilers identified defendant as having been the driver of the automobile. Eilers also identified defendant at a police lineup and made an in-court identification of him. Defendant argues that the courtroom identification by Eilers should not have been allowed as it was based on an unduly suggestive lineup. Defendant notes that he was noticeably shorter and younger than the other men in the lineup presented to Eilers. Although a lineup does not require exact physical conformity of the participants, including height, *State v. Word*, 527 S.W.2d 708 (Mo.App.1975), we need not in this case rule on the question of whether the lineup was unduly suggestive. Looking at the "totality of the circumstances," [1] we find "the presence of an independent basis of identification, absence of suggestive influence by others and a positive courtroom identification," *State v. Arnold*, 528 S.W.2d 164, 166 (Mo.App.1975). Defendant passed within fifteen feet of the identifying witness and was observed during daylight hours for a period of about fifteen minutes. The witness also gave an accurate description of the defendant to police. Thus, witness Eilers had ample independent basis in the light of the totality of circumstances for the courtroom identification, and the identification testimony was admissible. *State v. Parker*, 458 S.W.2d 241 (Mo.1970); *State v. Arnold*, supra; *State v. Rutledge*, 524

S.W.2d 449 (Mo.App.1975). Thus, assuming arguendo the lineup was in some regard maculated, upon the facts here, the in-court identification was proper. *State v. McFadden*, 530 S.W.2d 440 (Mo.App.1975); *State v. Davis*, 529 S.W.2d 10 (Mo.App.1975).

■ Defendant's second allegation relates to alleged hearsay testimony given by the arresting officer who, in response to questioning, testified that it was defendant's car which had been observed at the scene of the theft. Defendant's counsel objected to the officer's reference that it had been the defendant's car which had been placed at the scene of the crime, and after the objection was sustained, motion for mistrial was made and denied. Defendant contends that although the objection to the hearsay testimony was stricken and the jury instructed to disregard the remark, the prejudicial effect could be eradicated only by declaring a mistrial; that the hearsay statement coerced defendant's concession during closing argument of his presence near the Dooley home. The defendant argues that the jury would not heed the trial court's admonition to disregard the statement concerning the presence of defendant's car. There is no merit to this contention. First, we cannot assume that the jury would defy the trial court's instruction to disregard the remark. Second, we do not find the remark so prejudicial that its effect could be removed only by resort to the drastic remedy of mistrial. The trial court, which is in the best position to judge the effect of the remark, did not abuse its discretion in failing to call for a mistrial. *State v. Mullen*, 528 S.W.2d 517 (Mo.App. 1975); *State v. Pickens*, 527 S.W.2d 29 (Mo. App.1975). Third, even had the hearsay remark been admitted—which it was not— the effect of placing defendant's automobile at the scene would have been, at most, nonprejudicially cumulative to the other evidence which had already clearly placed defendant at the scene. *State v. Mills*, 521 S.W.2d 495 (Mo.App.1975). There was posi-

1. See *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

tive identification of the defendant at the scene of the crime without regard to the car. The car was not the factor that placed the defendant at the Dooleys'; defendant's presence there was established through eyewitness identification.

■ Finally, defendant argues that his Fifth Amendment rights were violated when he was compelled to walk in the courtroom to display that he was afflicted with a severe limp. Our review of Fifth Amendment self-incrimination cases reveals that no violation was done to defendant's rights in that regard. In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), a case upholding the validity of the taking of a blood sample of an accused, it was said:

> "[B]oth federal and state courts have usually held that it [Fifth Amendment] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, *to walk*, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." (Emphasis added). Id., 384 U.S. at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916.

In *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), the taking of a defendant's voice exemplars was held valid, and the foregoing quoted language of *Schmerber v. California* was repeated. The court also said:

> "It has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination." *United States v. Dionisio*, 410 U.S. at 5–6, 93 S.Ct. at 767, 35 L.Ed.2d at 74.

Similarly, *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), held the taking of handwriting exemplars

not to be protected by the Fifth Amendment. And, again, *Schmerber v. California*, was quoted with approval in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), where the defendant was required to give voice utterings at a pretrial lineup.

We regard the requirement that the defendant display a limp in court as merely the identification of a physical characteristic outside the protective aegis of the Fifth Amendment stricture against self-incrimination. There was no compelling of "communications" or "testimony"—merely the source of "real or physical evidence" not barred by the Fifth Amendment. As stated by Justice Holmes in *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910):

> "[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, *not an exclusion of his body as evidence when it may be material.*" Id., 218 U.S. at 252–253, 31 S.Ct. at 6, 54 L.Ed. at 1030. (Emphasis added).

We find no error by the trial court in compelling the defendant to walk for the purpose of displaying an identifiable and material physical characteristic. Defendant's asseveration that his walk in the courtroom was an infringement of his privilege against self-incrimination amounts to an "extravagant extension of the 5th Amendment." Id., 218 U.S. at 252, 31 S.Ct. at 6, 54 L.Ed.2d at 1030.

Our ruling comports with prior Missouri decisions. In *State v. Cook*, 440 S.W.2d 461 (Mo.1969) the Missouri Supreme Court, in quoting from *U. S. v. Wade*, supra, which in turn quoted from *Schmerber v. California*, supra, approved the following language:

> "(The privilege) [Fifth Amendment privilege against self-incrimination] offers no protection against compulsion * * * to appear in court, to stand, to assume a stance, *to walk*, or to make a particular gesture.' * * * *" (Emphasis added). *State v. Cook* at 463.

Defendant argues that he is not required to make any affirmative action for identification, referring to the following emphasized language of *State v. Jackson,* 444 S.W.2d 389, 392 (Mo.1969), cert. den. 397 U.S. 1014, 90 S.Ct. 1247, 25 L.Ed.2d 428 (1970):

> "[I]t must be remembered that the safeguard against self-incrimination refers to evidence, 'testimonial compulsion'; it does not mean that the accused may not be subjected to the observation of witnesses and jurors—*in the absence of his being required to perform some affirmative act in aid of observation.*"

But defendant's paint brush is too broad. The quote from *Jackson* was taken from 22A C.J.S. Criminal Law § 652, which goes farther than the quoted language by stating that the self-incrimination privilege does not apply to physical evidence which may be revealed by an ordinary observation of the defendant or by requiring the defendant to stand, wear or remove articles of clothing, show scars and even shave or have his hair cut. In *State v. Jackson,* supra, the court also cited and relied on *State v. Dean,* 400 S.W.2d 413 (Mo.1966), as support for its statement upon which defendant seeks solace. And in *State v. Dean* it was noted that an accused could be "compelled to be present at the trial, to stand, to sit, to turn this way or that, and to try on a cap or a coat," Id. at 416, quoting from the concurring opinion of Justice Douglas in *Rochin v. California,* 342 U.S. 165, 179, 72 S.Ct. 205, 96 L.Ed. 183, 193 (1952). Clearly, then, the *State v. Jackson* decision is not so restrictive as to interdict the defendant from being compelled to stand or walk for purposes of exhibiting a material physical fact, for the authorities upon which the Jackson case relies allow for such affirmative actions by an accused. We find no enervation of defendant's Fifth Amendment rights by compelling him to walk in the courtroom to display his physical aberration. The privilege against self-incrimination does not extend that extravagantly.

The judgment is affirmed.

SIMEONE, P. J., and KELLY, J., concur.